MARIA CRISTINA TORRES, ETC., ET AL., Plaintiffs, Appellants, and Appellees, *v.* PUERTO RICO WATER RESOURCES AUTHORITY, Defendant, Appellee, and Appellant.

Nos. R-63-293, R-63-295. Decided April 20, 1967.

---

[7] Income Tax Act of Puerto Rico, Act No. 91 of 1954, § 22(a), (b) (8); § 116(a) (1), (2).

*Héctor Lugo Bougal* for appellants and appellees. *José Antonio Arabía* for appellee and appellant.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Both petitions for review were filed against the same judgment rendered by the Ponce Part of the Superior Court in an action for damages for the injuries suffered by a girl 12 years old in the yard of the school she attended, where she studied the fifth grade.

The accident occurred on April 5, 1962. In September 1960, the defendant Authority deposited in a vacant parcel

of land belonging to the government some poles for a lighting project in that section. This parcel was located in a place near the rural school attended by the girl. When the project was finished in July 1961, the Authority left several unused poles there. The lot was subsequently granted to Abad Rodríguez.

Testifying as witness for defendant, Abad Rodríguez stated that as occupant of the parcel he insisted on the removal of the poles by notifying the Authority more than once, without the latter complying. Then, on his own, he removed them and placed them on another parcel across from his own, which belonged to the government, from which, with the passing of time, they slid downhill remaining scattered in the schoolyard around the two classrooms.

From the time the unused poles were left on Abad Rodríguez' parcel until the occurrence of the accident on April 5, 1962; they were abandoned by defendant without the latter attending, caring or watching over them. A defendant's witness in charge of its supervision testified that at no time did he go to see whether they were in their place. Another witness brought by defendant testified that he had warned the latter's employees on the danger of those poles for the children in the schoolyard and playground, something which he observed frequently from his house nearby. After the accident the poles were removed. Photographs admitted in evidence show that the poles were lying on the ground, partly hidden by the grass. The girl testified that they were black on a brown ground. Two of these poles were partially on a path which was the front access to the two classrooms. According to undisputed evidence, the children had to pass by it, in going to and coming from their school. The two poles on the path were almost touching each other, according to the photographs, although forming steps; one was higher than the other.

The day of the accident the girl was at recreation and

together with other schoolmates was going rather fast, "slightly running" to drink water at another school across from her own, before the bell rang to go back to class. A foot got in between the two poles and she fell down. "I tried to hold my foot from going in but it did." Other persons had to pick her up and she moaned in pain. The fall produced a fracture of her right leg which was in a plaster cast for three months.

The medical testimony was to the effect that the girl had a lateral angular deformity of the distal third of the right leg; a 15-degree limitation of the dorsiflexion of the right ankle; 20-degree limitation of the plantiflexion; almost total limitation of the inversion of the right ankle; the Xrays showed an old fracture of the distal third of the tibia and peroneal bone of the right leg which was healed, with a lateral angulation of the distal fragment which measures 10 degrees and which is revealed in the articular surface of the ankle causing an abnormal inclination which interferes with the normal function of the ankle. The physician concluded that a permanent partial disability exists as a direct consequence of the fracture evaluated in the loss of 15% of the physiological functions of the right leg below the knee. Although the condition might improve somewhat, the partial disability shall be permanent, because the relation of the articular surface of the tibia is at an angle in relation to the longitudinal axis of the same bone. The girl limped and leaned on a cane.

In its conclusions of law the trial court stated that the Authority was negligent in not exercising the degree of vigilance and inspection of those poles required by the circumstances, and charged said negligence in the degree of one-third of the guilt. It concluded that Juan Abad Rodríguez was guilty of another third and that the girl was guilty of the accident in the remaining third. It fixed the damages in the amount of $9,000 and in accordance with its conclu-

sions, rendered judgment ordering the Authority to pay $3,000 to the girl and $1,000 to her mother for the moral suffering and anguish.

 Before considering whether or not there was concurrent guilt on the part of the girl with the adverse party in the action, that is, the defendant Authority, an obvious error was committed which merits to be corrected. The court made the burden of the guilt adjudged to Abad Rodríguez fall upon the girl and to the relief of the Authority. As an economic question, according to the judgment rendered, she is paying not only for the guilt charged her but also for Abad's guilt. Abad was never in the litigation. He was not heard nor defeated at the trial, for which reason the adjudication of guilt against him does not bind him, neither towards plaintiff, to answer to her for damages in the action, nor towards the Authority to answer to it. Abad Rodríguez was not joined as a codefendant with the Authority. If he had been, according to the findings of the court, he would have answered to plaintiff for the entire compensation as a joint tort-feasor of the damage with the Authority, in the same manner as the Authority would answer also for the entire compensation as joint tort-feasor, except in either case, in that part which attributed concurrent guilt to the girl. The obligation of two or more judgment debtors in case of liability as joint tort-feasors of a damage is solidary. *Rivera v. Great American Indemnity Co.*, 70 P.R.R. 787 (1950); *Prado v. Quiñones*, 78 P.R.R. 309 (1955). *Cf. García v. Government of the Capital*, 72 P.R.R. 133 (1951); *Ginés v. Aqueduct and Sewer Authority*, 86 P.R.R. 490 (1962); *Cortijo Walker v. Water Resources Authority*, 91 P.R.R. 557 (1964); *Widow of Andino v. Water Resources Authority*, 93 P.R.R. 168 (1966).

Abad Rodríguez not being a codefendant, the Authority, if it wanted to defend itself from its guilt or to take advantage thereof, should have made him a third-party de-

fendant, under the mechanism offered by Rule 12.1 of the Rules of Civil Procedure.[1]

Assuming that the girl was guilty within one-third of the damage as decided by the court, according to the foregoing, she would be entitled, against the Authority, to a compensation of $6,000, not of $3,000.

■■ It remains to be seen whether the girl was guilty. Section 1802 of the Civil Code, 1930 ed., provides, as amended by Act No. 28 of June 9, 1956, that "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." The law requires *imprudence*. Under the facts and circumstances in the record it cannot be said that the girl was imprudent. Prudence is to know how to distinguish between right and wrong so as to follow it or escape therefrom; it is discernment, wisdom— as Casares says. *Diccionario Ideológico* (1963). An imprudent person, according to Cabanellas in his *Diccionario de Derecho Usual* (1953), is a negligent person, wanting in foresight, who creates a serious risk for himself or for another, without obligation, necessity, or benefit. In the Anglo-Saxon ideological concept, the quality of being imprudent means lack of circumspection or due regard to consequences, injudiciousness. Webster's Third New Int. Dictionary (1961).

·· The girl testified that the teacher had told them not to play with the poles, and it is mentioned that the children "tampered" with the poles on the hill.

■ When the accident occurred the girl was not playing on the poles. They were obstructing the path which was used for entering and leaving the schoolrooms. All the children had to go that way and they did. What happened to her was a fact, sooner or later unavoidable in view of the created

---

[1] Rule 12.1: "At any time after commencement of the action, a defendant may, as a third-party plaintiff, serve a summons and complaint upon a person not a party to the action *who is or may be liable to him for all or part* of the plaintiff's claim against him."

condition, and it could have happened to her and to any other child and to any other person, including an adult, under the said circumstances. The conclusion must be that the girl was not guilty of concurrent negligence with the defendant.

In accordance with the foregoing the judgment sought to be reviewed is modified to order the Water Resources Authority to pay plaintiff the compensation of $9,000 and $1,000 to her mother, and thus modified it will be affirmed.